UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

IGOR YEVSTIFEEV,
SVIATLANA HARNIZONAVA,

                          Plaintiffs,

                                                  <u>DECISION AND ORDER</u>

                                                  08-CV-6476L

                        v.

BRAD STEVE, individually and as
Town of Brighton Police Officer,
ROBERT FISHER, individually and as
a Town of Brighton Police Officer,
FRANK SCARCELLI, individually and as
a Town of Brighton Court Reporter,
TOWN OF BRIGHTON,
TOWN OF BRIGHTON POLICE DEPARTMENT,
THOMAS VOELKL, Town of Brighton
Police Chief,
TOWN OF BRIGHTON COURT,

                          Defendants.
_____

## INTRODUCTION

Plaintiffs Igor Yevstifeev ("Yevstifeev") and his wife, Sviatlana Harnizonava (collectively "plaintiffs"), proceeding *pro se*, bring this action against The Town of Brighton Police Department, its police chief, two police officers, the Brighton Town Court and a court reporter, pursuant to 42 U.S.C. §1983 ("Section 1983"). In brief, plaintiffs allege that the defendants unlawfully arrested and tried Yevstifeev for driving while intoxicated and other offenses, in violation of both plaintiffs' First, Fourth, Fifth, Sixth and Fourteenth Amendment constitutional rights, and that defendants thereafter conspired to cover up their misconduct.

Familiarity with the underlying undisputed facts, summarized here, is presumed. On November 11, 2005, Brighton Police Officers Brad Steve and Robert Fisher were investigating a hit-and-run motor vehicle accident. Using a license plate number provided by several eyewitnesses, the

officers traced the suspect vehicle to plaintiffs' residence. Upon discovering Yevstifeev's motor vehicle at the home, which matched witness descriptions and had damage consistent with the accident scene, the officers interviewed Yevstifeev, who was found to be intoxicated. Sobriety tests were administered and Yevstifeev was eventually arrested. During this time, Harnizonava made several attempts to halt the investigation and arrest, including physically blocking the officers' path and ignoring orders to return to the home, and attempting to open the door of a patrol car to release Yevstifeev from the back seat.

Harnizonava was arrested and charged with obstructing government administration in the second degree, while Yevstifeev was arrested and ticketed for driving while intoxicated, refusal to perform a breath screening test, unsafe backing and leaving the scene of an accident. Upon arrival at the police station, Yevstifeev refused to cooperate with booking procedures. After being placed in a holding cell to "calm down" for a time, Yevstifeev was permitted to leave the cell to continue processing. While Yevstifeev testified at his deposition that he could not recall what happened when he left the cell, Officers Steve and Fisher testified that as Yevstifeev exited the cell, he charged Officer Steve and attempted to punch him in the face. Officer Steve kicked Yevstifeev in the abdomen to decentralize him, causing Yevstifeev to fall and strike his head on a counter. Officers Steve and Fisher testified that Yevstifeev continued to struggle and throw punches as they restrained and handcuffed him, and returned him to a holding cell. Yevstifeev was then charged with resisting arrest and obstructing governmental administration in the second degree. A medical technician was called to examine Yevstifeev, and found that no medical treatment was necessary. Later, after continued agitated behavior and alleged verbal threats, which Yevstifeev testified that he did not recall making but might have made, Yevstifeev was placed under a mental hygiene arrest and transported to Strong Memorial Hospital.

Following a non-jury trial in the Brighton Town Court, Yevstifeev was found guilty of resisting arrest and obstruction of government administration. On appeal to the Monroe County Court, the conviction for obstruction of government administration was upheld, the conviction for

resisting arrest was overturned, and the trial court's finding of probable cause for the arrest was upheld. Harnizonava received an adjournment in contemplation of dismissal on the charge of obstruction of government administration. (Dkt. #56-4 at Exhs. L, M).

Plaintiffs commenced this action on October 21, 2008. (Dkt. #1). On August 12, 2010, the Court granted a motion to dismiss plaintiffs' claims against one of the defendants, Brighton Town Court Reporter Frank Scarcelli. (Dkt. #36). The remaining defendants now move, pursuant to Fed. R. Civ. Proc. 56, for summary judgment dismissing the complaint (Dkt. #55). Plaintiffs oppose that motion, and have also moved to treat certain testimony given by the defendant police officers, Brad Steve ("Steve") and Robert Fisher ("Fisher") at Yevstifeev's pretrial hearing and trial, as perjuries and/or denials of due process (Dkt. #49). For the reasons set forth below, the defendants' motion is granted, plaintiffs' motion is denied, and the complaint is dismissed in its entirety.

**DISCUSSION**

**I.     The Standard for Summary Judgment**

Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986).

Where, as here, the parties opposing summary judgment are proceeding *pro se*, the Court must "read the pleadings ... liberally and interpret them to raise the strongest arguments that they suggest." *Corcoran v. New York Power Auth.*, 202 F.3d 530, 536 (2d Cir.1999). Nevertheless, "proceeding *pro se* does not otherwise relieve [an opposing party] from the usual requirements of

summary judgment." *Fitzpatrick v. N.Y. Cornell Hosp.*, 2002 U.S. Dist. LEXIS 25166 at *5 (S.D.N.Y. 2003). In responding to a properly-supported motion for summary judgment, the plaintiffs may not reply upon conclusory allegations or denials, but instead must produce evidence in admissible form, setting forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984).

**II.   Plaintiffs' Section 1983 Claims Against the Town**

"[I]n order to state a claim under Section 1983, a plaintiff must allege a violation of rights secured by the Constitution or laws of the United States, and that such violation was committed by a person under the color of state law." *Kern v. City of Rochester*, 93 F.3d 38, 43 (2d Cir. 1996). Where Section 1983 claims are brought against a municipality, the plaintiff must plead and prove that: (1) there was an official policy or custom; (2) which caused the plaintiff to be subjected to; (3) the denial of a constitutional right. *See Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983).

The plaintiffs generally allege that the Town: (1) failed to properly investigate the underlying arrest incident, and/or did not inform the plaintiffs of the results of such investigation; (2) employed Officer Steve in its police department, even though he was allegedly sadistic and racist; and (3) the Town actively obfuscated the events surrounding the arrest of the plaintiffs, and used Brighton Town Court Reporter Scarcelli to do so. Plaintiffs do not, however, plead any policy or custom on the part of the Town, or allege that such a policy or custom caused them any particular constitutional injury.

With regard to the initial claim that the circumstances surrounding plaintiffs' arrest was not adequately investigated or reported, the Town has produced a copy of a lengthy written report by the head of Internal Affairs for the Police Department who investigated the matter, and is claimed to have shared those results with the plaintiffs. (Dkt. #56-5 at Exh. P). Plaintiffs have submitted no evidence to the contrary, nor have they sufficiently alleged that the Town maintained a policy of such conduct, and accordingly, that claim is dismissed.

Similarly, plaintiffs have not submitted any evidence or identified an official policy relative to their contentions that the Town employed a sadistic or racist police officer or that a Town Court Reporter altered trial transcripts as part of a Town-initiated "cover-up." These claims appear to be wholly speculative, and are therefore dismissed.

### III.   Plaintiffs' Excessive Force Claims Against Officers Steve and Fisher

Plaintiffs also claim that they were subjected to the excessive use of force in violation of their constitutional rights under the Fourth Amendment, in the form of "brutality" and "torture," by Officers Steve and Fisher.

In determining whether a Fourth Amendment violation has occurred, the use of force during an arrest is weighed using a reasonableness standard. *See Terry v. Ohio*, 392 U.S. 1, 19-20 (1968). "The 'reasonableness' of [the force used] must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *See Graham v. Connor*, 490 U.S. 386, 396 (1989). To make its finding, the Court considers all the facts of the case, including the severity of the crime, whether the arrestee posed an immediate threat to the safety of others, and whether he or she actively resisted the arrest. *Id*. Thus, a use of force will generally be found to be excessive only where "it is objectively unreasonable 'in light of the facts and circumstances confronting [the arresting officer,] without regard to [his] underlying intent or motivation.'" *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004), *quoting Graham*, 490 U.S. 386 at 397. *See also Zellner v. Summerlin*, 494 F.3d 344, 370 (2d Cir. 2007) (the objective reasonableness of the arresting officer's conduct is evaluated "in light of the information the officers possessed" at the time).

Here, the force used against the plaintiffs by the defendant officers is comprised of: (1) Officer Steve's take-down of Harnizonava shortly after Yevstifeev's arrest; (2) the handcuffing of both plaintiffs by the officers; and (3) the officers' scuffle with, and take-down of, Yevstifeev, during a lengthy altercation at the jail.

Initially, the Court rejects plaintiffs' attempts to raise new issues of fact by submitting affidavits which contradict their deposition testimony and prior written statements, because "factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996). *See also Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("factual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts her own prior deposition testimony").

In light of the remaining undisputed facts, and giving plaintiffs every favorable inference, I conclude that no reasonable finder of fact could conclude that the force used was not objectively reasonable. Plaintiffs do not dispute – or else claim that they lack sufficient memory to contradict – the officers' testimony that throughout the plaintiffs' encounter with law enforcement, both plaintiffs were verbally and physically combative, that Harnizonava refused to follow verbal instructions not to interfere with Yevstifeev's arrest and actually attempted to free him from custody, that Yevstifeev charged Officer Steve and attempted to punch him when his cell door was opened (which provided the factual grounds for Yevstifeev's later, affirmed conviction for obstruction of governmental administration), that Yevstifeev physically struggled with both officers and attempted to strike them, that both plaintiffs continually screamed and/or cursed at the officers while in their holding cells, and that two hours after his arrival at the jail, Yevstifeev remained so agitated that he had to be physically restrained on a gurney in order to effect transport to the hospital for a mental hygiene arrest. In light of plaintiffs' undisputed conduct, it is manifest that the officers' various attempts to restrain and handcuff them at their residence, and later to take Yevstifeev to the ground and restrain him after he rushed an officer at the jail, were in direct response to "immediate threats" posed by the plaintiffs to the safety of the arresting officers and/or themselves. It is also undisputed that once the plaintiffs were effectively restrained in each instance, no further force was used against them.

Also of note is the fact that the plaintiffs have not alleged or proved that they sustained any physical injuries as a result of the excessive force allegedly used against them. "Although a showing of excessive force does not require proof of permanent injury . . . [t]he absence of any injury, however slight or fleeting, is [a] particularly compelling" indication that no excessive force was used. *Jennejahn v. Village of Avon*, 575 F. Supp. 2d 473, 480-81 (W.D.N.Y. 2008). *See also Wilder v. Village of Amityville*, 288 F. Supp. 2d 341, 344 (E.D.N.Y. 2003) (allegation of "sore, yet uninjured" wrists from handcuffing "simply does not rise to the level of objective excess that reasonable police officers would consider to be unlawful conduct in an arrest situation").

Although Harnizonava now claims that her elbow and shoulder were scraped and bloodied at the time of her arrest, contemporaneous photographs show no such injuries, and she testified at her deposition that she was not hurt and had not sought medical treatment for any arrest-related injuries. (Dkt. #56-5 at Exh. S). While the parties agree that Yevstifeev bumped his head and right eye on a counter during the physical altercation with Officer Steve at the jail, he was evaluated immediately afterwards by EMTs who determined that no treatment was necessary. Medical records from Yevstifeev's hospital admission on a mental hygiene arrest later the same morning state that upon admission, Yevstifeev was ambulatory and denied any pain. (Dkt. #56-1 at Exh. D, #56-4 at Exhs. G-H). When Yevstifeev complained to his neurologist approximately six weeks after the incident and stated that he believed that he was experiencing headaches, he did not attribute them to any conduct by the defendant officers, but instead to the fact that he "became upset and struck his head on the wall a couple of times" in the jail holding cell on the night of his arrest. The neurologist concluded, upon examination, that the headaches were simply "a somatic compound of an underlying mental illness" for which psychiatric treatment was recommended. (Dkt. #56-4 at Exh. K).

In short, plaintiffs have failed to present evidence sufficient to convince any reasonable finder of fact that they were subjected to excessive force. Those claims are dismissed.

### IV.     Plaintiffs' False Arrest and Malicious Prosecution Claims

The plaintiffs also claim that they were both subjected to false arrest and/or false imprisonment and malicious prosecution. To establish a claim of false arrest, false imprisonment, malicious prosecution, or a violation of civil rights arising therefrom, plaintiffs must prove that their underlying arrests lacked probable cause. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). As such, the existence of probable cause is "a complete defense to [a civil rights action arising from an arrest]," whether brought under state law or Section 1983. *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994). *See also Crenshaw v. City of Mount Vernon*, 372 Fed. Appx. 202, 206 n.2 (2d Cir. 2010) ("[t]he existence of probable cause is . . . a defense to a malicious prosecution claim under Section 1983"); *Manganiello v. City of New York*, 612 F.3d 149, 161-162 (2d Cir. 2010) (same).

While an arrest may not be grounded solely on a "hunch," *United States v. Patrick*, 899 F.2d 169, 174 (2d Cir. 1990), "a probable cause determination does not require proof beyond a reasonable doubt; it is the mere probability of criminal activity, based on the totality of the circumstances, that satisfies the Fourth Amendment." *Donovan v. Briggs*, 250 F. Supp. 2d 242, 251 (W.D.N.Y. 2003), *quoting Hahn v. County of Otsego*, 820 F. Supp. 54, 55 (N.D.N.Y. 1993). As such, "the standard for establishing probable cause is not a particularly stringent one. It does not require proof of a suspect's guilt beyond a reasonable doubt. Instead, probable cause to arrest exists when the known facts are 'sufficient to warrant a person of reasonable caution in the *belief* that the person to be arrested has committed or is committing a crime.'" *Donovan*, 250 F. Supp. 2d 242 at 253, *quoting Jocks v. Tavernier*, 316 F.3d 128 at 135 (2d Cir. 2003)(emphasis in original). *See also Loria v. Gorman*, 306 F.3d 1271, 1288-89 (2d Cir. 2002) ("probable cause is an assessment of probabilities, not an ascertainment of truths").

The question of probable cause for Yevstifeev's arrest was established by the proceedings in state court, wherein he had a full and fair opportunity to challenge the trial court's determination that the arresting officers did, indeed, have probable cause to arrest him. (Dkt. #56-4 at Exhs. L, M). Yevstifeev appealed the trial court's finding of probable cause, and that finding was affirmed by the

Monroe County Court. (Dkt. #66 at 3). Because the state court found that there was probable cause to arrest Yevstifeev, and because that finding has not been successfully challenged or otherwise overturned, he is collaterally estopped from arguing here that probable cause was lacking, and thus cannot establish a claim of unlawful arrest, false imprisonment or malicious prosecution. *See e.g.*, *DeFranco v. Town of Irondequoit*, 2009 U.S. Dist. LEXIS 106824 (W.D.N.Y. 2009).

Plaintiffs concede that Harnizonava never challenged any aspect of the criminal prosecution against her, including the question of probable cause. The undisputed facts establish that Harnizonava engaged in multiple attempts to interrupt Yevstifeev's arrest, confronting the arresting officers and even attempting to free Yevstifeev from police custody by opening the door of the patrol car in which he had been placed. In light of these facts, I conclude that no reasonable trier of fact could conclude that the officers lacked probable cause to arrest her for obstruction of government administration in the second degree. *See Wilder*, 288 F. Supp. 2d 341 at 344-45 ("[f]indings of probable cause to [commit obstruction of governmental administration in the second degree] may be predicated upon, for example, a defendant's refusal to obey orders to leave a premises . . . In the instant case, Defendants had probable cause to arrest Plaintiff for [second degree obstruction of governmental administration] when she ignored three orders to move away"). *See generally* N.Y. Penal Law §195.05 ("[a] person is guilty of obstructing governmental administration [in the second degree] when he intentionally . . attempts to prevent a public servant from performing an official function, by meant of intimidation, physical force or interference . . .").

**V.     Miscellaneous Claims**

Plaintiffs also vaguely claim that their right to "privacy" was violated when police officers called family members after their arrest, that they were denied medical treatment and/or denied the right to counsel, and that they were subjected to "discrimination" via selective prosecution. They also speculatively contend that Yevstifeev was sexually assaulted and/or injected with an unknown substance while at the jail, although Yevstifeev concedes that he has no actual memory of such

events. Plaintiffs provide no admissible evidence whatsoever to support these claims, and they are accordingly dismissed.

VI.     **Plaintiffs' Claims Against the Police Department, Police Chief Thomas Voelkl and the Brighton Town Court**

Plaintiffs have also asserted constitutional claims against the Police Department, Chief Voelkl, and the Brighton Town Court.

Because the Brighton Police Department is an administrative arm of the Town lacking "a legal identity separate and apart from the Town," *Loria v. Irondequoit*, 775 F. Supp. 599, 606 (W.D.N.Y. 1990), all claims against it are redundant and are therefore dismissed.

Plaintiffs also assert claims against former Brighton Chief Voelkl. Initially, all claims against Voelkl in his official capacity are dismissed as redundant of those against the municipality. *See generally New York Youth Club v. Town of Smithtown*, 2012 U.S. Dist. LEXIS 47103 at *22-*23 (E.D.N.Y. 2012); *Murray v. Coleman*, 2011 U.S. Dist. LEXIS 58188 at *2 (W.D.N.Y. 2011).

To the extent the plaintiffs' claims pertain to Voelkl in his individual capacity, it is well settled that "[a] plaintiff asserting a Section 1983 claim against a supervisory official in his individual capacity must show that the supervisor was personally involved in the alleged constitutional deprivation." *Rodgers v. City of Rochester*, 2007 U.S. Dist. LEXIS 38854 at *27 (W.D.N.Y. 2007). *See also Russell v. Demarco*, 2012 U.S. Dist. LEXIS 60374 at *6 (E.D.N.Y. 2012) ("[a] complaint based upon a violation under Section 1983 that does not allege the personal involvement of a defendant fails as a matter of law"), *citing Johnson v. Barney*, 360 F. Appx. 199 (2d Cir. 2010). The plaintiffs have alleged no personal involvement whatsoever by Voelkl in the alleged constitutional and state law violations, nor does the record suggest any such involvement. As such, the plaintiffs' individual capacity claims against Voelkl are dismissed.

Finally, the plaintiffs' claims against the Brighton Town Court are not claims against a "person" and moreover, the Town Court is entitled to Eleventh Amendment immunity. *See Zuckerman v. Appellate Div., Second Dep't*, 421 F.2s 625, 626 (2d Cir. 1970); *Shehabeldin v. Wildon*, 2011 U.S. Dist. LEXIS 120846 at \*3 (E.D.N.Y. 2011); *Bernstein v. New York*, 591 F. Supp. 2d 448, 465 n.145 (S.D.N.Y. 2008). Those claims are likewise dismissed.

## VII. Plaintiffs' State Law Claims

Although plaintiffs do not cite specifically to federal or state statutes in their complaint, to the extent that plaintiffs are attempting to pursue their claims against the Town or the individual officers under applicable New York State law, it is undisputed that they have failed to satisfy the prerequisite of filing a timely notice of claim in compliance with New York General Municipal Law, and moreover, did not commence the instant action within the applicable year-and-ninety-day statute of limitations. N.Y. General Municipal Law §§50-e, 50-I. Thus, plaintiffs' state law claims, if any, are dismissed.

## VIII. Plaintiffs' Motion to Treat Testimony as Perjured and/or Violative of Due Process

Plaintiffs further allege that Officers Steve and Fisher committed perjury when they testified at plaintiffs' pretrial hearing and/or criminal trial in state court. Because the officers are, as a matter of law, "absolutely immune from a section 1983 claim that [they] testified falsely" at adversarial pretrial and trial proceedings, plaintiffs' motion to treat the testimony as perjury, or to sanction it as a violation of plaintiffs' due process rights, is denied. *Dukes v. New York*, 743 F. Supp. 1037, 1044 (S.D.N.Y. 1990). *See also Briscoe v. LaHue*, 460 U.S. 325, 334-36 (1983) (granting police officers absolute immunity from liability for testimony at trial); *Daloia v. Rose*, 849 F.2d 74, 75-76 (2d Cir. 1988) (extending absolute immunity for officers testifying at adversarial pretrial proceedings). In any event, plaintiffs have failed to produce any evidence that the officers' testimony was false in any material respect.

- 11 -

## **CONCLUSION**

For the foregoing reasons, plaintiffs' motion to treat the officers' testimony as perjury (Dkt. #49) is denied, defendants' motion for summary judgment (Dkt. #55) is granted, and the remainder of the complaint is dismissed in its entirety, with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       May 18, 2012.